IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:21-CR-407-D
SOUTHERN DIVISION
No. 7:23-CR-101-D
No. 7:26-CV-175-D

| | | |
|---|---|---|
| QUATAVIOUS HUNTER, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

On March 30, 2026, Quatavious Hunter ("Hunter" or "petitioner"), proceeding pro se, moved to vacate, correct, or set aside his sentence under 28 U.S.C. § 2255. See [D.E. 270] 11; Houston v. Lack, 487 U.S. 266, 275-76 (1988). On May 18, 2026, the United States moved to dismiss as untimely Hunter's section 2255 motion [D.E. 275] and filed a memorandum in support [D.E. 276]. On May 19, 2026, the court notified Hunter about the motion to dismiss, the consequences of failing to respond, and the response deadline [D.E. 277]. See Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam). On June 12, 2026, Hunter responded in opposition [D.E. 279]. As explained below, the court denies respondent's motion to dismiss and refers Hunter's section 2255 motion to Magistrate Judge Robert B. Jones, Jr. to hold an evidentiary hearing concerning Hunter's section 2255 motion and to issue a memorandum and recommendation.

I.

In 2019, the Nash County Sheriff's Office ("NCSO"), the Rocky Mount Police Department ("RMPD"), and North Carolina probation authorities began investigating Hunter for drug trafficking and possession of multiple firearms. See Presentence Investigation Report ("PSR") [D.E. 207] ¶ 17. On November 14, 2019, state probation authorities and the RMPD executed a search warrant at Hunter's Rocky Mount residence. Id. ¶ 18. They seized .28 grams of fentanyl, a .45-caliber handgun fully loaded with a large-capacity magazine, 41.5 grams of marijuana, two digital scales, one unidentified pill, and drug packaging paraphernalia. Id. Laboratory analysis confirmed the presence of heroin, ANNP (a precursor to fentanyl), and fentanyl. The analysis also confirmed that the unidentified pill was one dosage unit of MDMA. In the next two years, the RMPD and the NCSO repeatedly encountered Hunter. See id. ¶ 19.

From 2019 to November 9, 2021, Hunter distributed 41.5 grams of marijuana, .28 grams of fentanyl, 1 dosage unit of MDMA, 10.14 grams of heroin, 26.83 grams of crack cocaine, 10.2 grams of cocaine, and 5 milligrams of oxycodone having a total converted drug weight of 109.07 kilograms. See id. ¶ 20. Hunter also possessed six firearms and countless rounds of ammunition. Two of the firearms had large capacity magazines. One was stolen, and Hunter used at least one in furtherance of his drug trafficking activities. See id.

On November 8, 2021, a federal grand jury in the Eastern District of North Carolina indicted Hunter. Count one charged possession with intent to distribute a quantity of heroin on November 14, 2019, in violation of 21 U.S.C. § 841(a)(1) in case number 5:21-CR-407. Counts two and six charged possession of a firearm in furtherance of a drug trafficking crime on November 14, 2019, and September 16, 2021, respectively, in violation of 18 U.S.C. § 924(c)(1)(A)(i). Counts three and seven charged possession of a firearm by a felon on November 14, 2019, and

2

September 16, 2021, respectively, in violation of 18 U.S.C. §§ 922(g)(1) and 924. Count four charged distribution of a quantity of heroin on February 18, 2021, in violation of 21 U.S.C. § 841(a)(1). Count five charged possession with intent to distribute a quantity of heroin, a quantity of cocaine, and a quantity of cocaine base (crack) on September 16, 2021, in violation of 21 U.S.C. § 841(a)(1). See id. ¶¶ 1–6.

On September 27, 2023, five defendants including Hunter were named in a four-count indictment in the Eastern District of North Carolina in case number 7:23-CR-101. See id. ¶¶ 7–12. Count one charged bribery of a public official from January 2023 to April 28, 2023, in violation of 18 U.S.C. § 201(b)(2)(A) and (C). Count two charged providing an object that threatens the order, discipline, or security of a prison to an inmate and aiding and abetting from January 2023 to April 28, 2023, in violation of 18 U.S.C. § 1791(a)(1) and (b)(5), and 18 U.S.C. § 2. Count three charged bribery of a public official and aiding and abetting from January 2023 to April 28, 2023, in violation of 18 U.S.C. § 201(b)(1)(A) and (C), and 18 U.S.C. § 2. Count four charged conspiracy to distribute and possess with intent to distribute a quantity of marijuana from March 2023 to April 28, 2023, in violation of 21 U.S.C. § 846. Hunter was charged in count three. See id.

On October 8, 2024, with a written plea agreement, Hunter pleaded guilty to count six of 5:21-CR-407 and count three of 7:23-CR-101. See id.; [D.E. 171]. In the plea agreement, the United States agreed to recommend a sentence of 240 months' imprisonment. See [D.E. 171] ¶ 4b. On February 10, 2025, this court varied down, accepted the parties' stipulated sentence of 240 months' imprisonment, and sentenced Hunter to 180 months' imprisonment on count three in 7:23-CR-101-D and 60 months' consecutive imprisonment on count six in 5:21-CR-407-D for a total of

3

240 months' imprisonment. See [D.E. 213, 218, 219]; [D.E. 267] 6–26. On February 27, 2025, the court docketed the judgment. See [D.E. 218]. Hunter did not appeal.

On March 30, 2026, Hunter filed this pro se motion under 28 U.S.C. § 2255 [D.E. 270] and a memorandum in support [D.E. 271]. In his motion, Hunter alleges that his counsel was ineffective by not filing a notice of appeal as Hunter directed. See [D.E. 270] 4. The United States moves to dismiss as untimely Hunter's petition. See [D.E. 275].

## II.

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for "failure to state a claim upon which relief can be granted" tests a section 2255 motion's legal and factual sufficiency. Fed. R. Civ. P. 12(b)(6); see Ashcroft v. Iqbal, 556 U.S. 662, 677–78 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–63, 570 (2007); Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008); accord Erickson v. Pardus, 551 U.S. 89, 93–94 (2007) (per curiam). In considering a motion to dismiss, a court need not accept a section 2255 motion's legal conclusions. See, e.g., Iqbal, 556 U.S. at 678. Similarly, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 677–79. Moreover, a court may take judicial notice of public records without converting a motion to dismiss into a motion for summary judgment. See, e.g., Fed. R. Evid. 201(d); Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009). In reviewing a section 2255 motion, the court is not limited to the motion itself. The court may consider "the files and records of the case." 28 U.S.C. § 2255(b); see United States v. Dyess, 730 F.3d 354, 359–60 (4th Cir. 2013); United States v. McGill, 11 F.3d 223, 225–26 (1st Cir. 1993); Raines v. United States, 423 F.2d 526, 529–30 (4th

4

Cir. 1970) (per curiam). Likewise, a court may rely on its own familiarity with the case. See, e.g., Blackledge v. Allison, 431 U.S. 63, 74 n.4 (1977).

Section 2255(f) contains a one-year statute of limitations. See 28 U.S.C. § 2255(f). Section 2255(f) provides that the one-year clock is triggered by one of four conditions, whichever occurs last:

> (1) the date on which the judgment of conviction becomes final; (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action; (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

Id. § 2255(f)(1)–(4); see Johnson v. United States, 544 U.S. 295, 299–300 (2005); United States v. Green, 67 F.4th 657, 663 (4th Cir. 2023); Whiteside v. United States, 775 F.3d 180, 182–83 (4th Cir. 2014) (en banc).

Hunter did not appeal, and his judgment of conviction became final no later than March 14, 2025, which is 14 days after the court docketed the judgment. See Gray v. United States, 196 F. Supp. 3d 605, 606 (E.D. Va. 2016); Fed. R. App. P. 4(b)(1)(A)(i). Under section 2255(f)(1), Hunter had one year from March 14, 2025, to timely file his section 2255 motion. See 28 U.S.C. § 2255(f)(1); Gray, 196 F. Supp. 3d at 606. Hunter did not place his section 2255 motion in the prison mailing system until March 30, 2026, and the court did not receive it until April 6, 2026. See [D.E. 270] 12; Houston, 487 U.S. at 275–76.

According to Hunter, on December 2, 2025, he learned that counsel did not file an appeal. See [D.E. 271] 4. Under section 2255(f)(4), Hunter's motion is timely if, exercising due diligence, Hunter could not have discovered that his attorney's failure to file the notice of appeal by March 30, 2025. See 28 U.S.C. § 2255(f)(4).

"Section 2255[(f)(4)] is not a tolling provision that extends the length of the available filing time by excluding certain periods that post-date the start of the limitations clock from the calculation of how much time has run." Wims v. United States, 225 F.3d 186, 190 (2d Cir. 2000). Instead, section 2255(f)(4) "resets the limitations period's beginning date, moving it from the time when the conviction became final, to the later date on which the particular claim accrued." Id. (citation omitted). Under section 2255(f)(4), the limitation period begins "when the facts could have been discovered through the exercise of due diligence, not when they were actually discovered." Aron v. United States, 291 F.3d 708, 711 (11th Cir. 2002) (emphasis omitted). Thus, the inquiry is objective and requires the court to "analyze whether a duly diligent person in the petitioner's circumstances would have discovered the facts supporting the claim or claims raised in the petition." United States v. Nunez-Garcia, 31 F.4th 861, 866 (4th Cir. 2022) (citation, quotations, and alterations omitted); see United States v. Denny, 694 F.3d 1185, 1189–90 (10th Cir. 2012); Wims, 225 F.3d at 190.

Although analyzed objectively, the "due diligence" inquiry is individualized and requires a court to consider the totality of the circumstances. See Aron, 291 F.3d at 712. In considering a prisoner's claim that counsel was constitutionally ineffective by failing to file a notice of appeal as directed, a court should focus on the prisoner's conditions of confinement, a prisoner's ability to communicate with the court and counsel, and communications between the prisoner and the prisoner's counsel and between the prisoner and the court. See, e.g., Ryan v. United States, 657 F.3d 604, 607–08 (7th Cir. 2011); Anjulo–Lopez v. United States, 541 F.3d 814, 818–19 (8th Cir. 2008); Aron, 291 F.3d at 712; Wims, 225 F.3d at 190–91. Moreover, section 2255(f)(4) "does not require the maximum feasible diligence, . . . [it requires] only 'due,' or reasonable, diligence." Aron, 291 F.3d at 712. Thus, "[d]ue diligence . . . does not require a prisoner to undertake repeated

6

exercises in futility or to exhaust every imaginable option, but rather to make reasonable efforts." Id. In other words, due diligence "is an inexact measure of how much delay is too much." Johnson, 544 U.S. at 309 n.7.

The Seventh Circuit noted that "[n]o rule of thumb emerges from the cases on how long prisoners may take to discover their lawyers' missteps, and we hesitate to pick a magic number." Ryan, 657 F.3d at 607. In the context of defense counsel's failure to file a notice of appeal, the Seventh Circuit also noted that a court would have to review the totality of the circumstances to determine "due diligence" in a given case and that various circuit courts have reached differing results on how long it would take a duly diligent prisoner to discover that the prisoner's lawyer failed to file a notice of appeal. Id.; compare, e.g., Granger v. Hurt, 90 F. App'x 97, 100 (6th Cir. 2004) (unpublished) (prisoner may wait at least two months after his sentencing hearing before even inquiring whether counsel followed instructions and filed a notice of appeal and still be found to have acted with "due diligence"), and Wims, 225 F.3d at 188, 191 (prisoner who waited five months to file his motion to vacate may have acted with "due diligence" given that he only waited four months after his sentencing hearing before inquiring whether his counsel filed a notice of appeal), with Anjulo–Lopez, 541 F.3d at 818–19 (prisoner who "waited an entire year to even contact his attorney regarding his appeal" did not act with "due diligence" (emphasis omitted)), and Montenegro v. United States, 248 F.3d 585, 588, 593 (7th Cir. 2001) (prisoner who waited nearly two years to file a motion to vacate did not act with "due diligence" given that six months after his sentencing hearing the prisoner had received a docket sheet "that revealed that an appeal in his case had not been filed"), partially overruled on other grounds by Ashley v. United States, 266 F.3d 671 (7th Cir. 2001), and Hannigan v. United States, 131 F. Supp. 3d 480, 485–94 (E.D.N.C. 2015) (holding that prisoner did not exercise due diligence when prisoner "did nothing

7

about his appeal or the lack of communication with his defense counsel" for 31.5 months after conviction became final), appeal dismissed, 638 F. App'x 234 (4th Cir. 2016) (per curiam) (unpublished). "[T]he district court need not decide precisely how long is too long if it can safely say that, wherever the line is, [the prisoner's case] lies on one side or the other." Ryan, 657 F.3d at 608.

The court cannot say from the record, the face of Hunter's petition and supporting papers, and the government's motion to dismiss and memorandum in support that a prisoner in Hunter's position exercising due diligence would have discovered his attorney's failure to file a notice of appeal by March 30, 2025. See, e.g., Denny, 694 F.3d at 1189–90; Wims, 225 F.3d at 190–91; Granger, 90 F. App'x at 100. In opposition, the government asserts that Hunter's motion is untimely because it was filed over one year after his conviction became final. See [D.E. 276] 6–7. That is not the relevant inquiry. Thus, the court denies the government's motion to dismiss Hunter's section 2255.

The court refers Hunter's motion to Magistrate Judge Robert B. Jones, Jr. to hold an evidentiary hearing concerning Hunter's section 2255 motion, including whether Hunter timely filed his motion and whether he directed his counsel to file a notice of appeal, and to issue a memorandum and recommendation. The court requests Magistrate Judge Jones to assess Hunter's credibility at the hearing. If Magistrate Judge Jones determines that Hunter committed perjury at the hearing concerning his alleged instruction to his counsel to file an appeal, the memorandum and recommendation should so state. If Hunter did perjure himself and later filed a motion for relief under the First Step Act, this court would consider such perjury as part of its analysis under 18 U.S.C. § 3553(a). Cf. Pepper v. United States, 562 U.S. 476, 480–81 (2011); High, 997 F.3d at 187–91; United States v. McDonald, 986 F.3d 402, 412 (4th Cir. 2021); United States v. Martin,

8

916 F.3d 389, 398 (4th Cir. 2019); <u>Davis v. United States</u>, No. 5:18-CR-457, 2021 WL 4757478, at *2 (E.D.N.C. Oct. 11, 2021) (unpublished).

III.

In sum, the court DENIES respondent's motion to dismiss [D.E. 275] and REFERS petitioner's section 2255 motion to Magistrate Judge Robert B. Jones, Jr. to hold an evidentiary hearing concerning petitioner's section 2255 motion and to issue a memorandum and recommendation.

SO ORDERED. This 12 day of June, 2026.

JAMES C. DEVER III<br>
United States District Judge

9